IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 3:20-CR-3905-JLB |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | December 9, 2020 |
| | ) | |
| VIKAS BAJAJ, | ) | |
| | ) | Courtroom 2A |
| Defendant. | ) | |
| | ) | San Diego, California |

TRANSCRIPT OF DIGITALLY RECORDED PROCEEDINGS

(Arraignment, Change of Plea, and Sentencing)

BEFORE THE HONORABLE JILL L. BURKHARDT, MAGISTRATE JUDGE

APPEARANCES:

FOR THE PLAINTIFF: NICHOLAS PILCHAK
Assistant U.S. Attorney
U.S. Attorney's Office
Southern District of California
880 Front Street, Room 6293
San Diego, CA 92101-8893
(619)557-5610

FOR THE DEFENDANT: DARA GRIMES
Grimes & Warwick
101 West Broadway, Suite 810
San Diego, CA 92101
(619)232-9700

COURT REPORTER: AMANDA M. LeGORE
RDR, CRR, CRC, FCRR, CACSR
U.S. District Court
333 West Broadway, Suite 420
San Diego, CA 92101
amanda_legore@casd.uscourts.gov

(Wednesday, December 9, 2020; 2:00 p.m.)

P R O C E E D I N G S

THE CLERK: Calling matter 2:20-CR-3905, United States of America versus Vikas Bajaj.

MR. PILCHAK: Good afternoon, your Honor. Nicholas Pilchak for the United States on this matter.

MS. GRIMES: Dana Grimes for Mr. Bajaj, who is present on VTC, your Honor.

THE DEFENDANT: Good afternoon, your Honor.

THE COURT: Sir, are you -- are you Vikas Bajaj

THE DEFENDANT: I am, your Honor. Yes.

THE COURT: I'm sorry. How do you pronounce your first name?

THE DEFENDANT: "Vik-as", your Honor.

THE COURT: Vikas. And your last is Bajaj?

THE DEFENDANT: That's correct. Yes, your Honor.

THE COURT: All right. Thank you.

All right. First things first.

Ms. Grimes, can you address the matter of video participation?

MS. GRIMES: Yes, your Honor.

Mr. Bajaj is informed that he has a right to be present for these proceedings. He is waiving that right and

consents to be present and to enter into a plea by video today.

THE COURT: All right. Mr. Bajaj. Is that correct? Are you agreeing to appear by video today?

THE DEFENDANT: Yes, your Honor. Thank you. That is correct.

THE COURT: All right. I accept your consent as knowingly and voluntarily entered into.

All right. I have before me a consent form to proceed before a magistrate judge.

Sir, you have the right to have this matter handled by a district judge. I have a consent form before me, indicating you wish to have me handle this matter for all purposes, including sentencing.

Is that what you desire?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. Sir, you are here because you have been charged in a criminal Information. You are not required to make --

There's no right to grand jury for a Class E misdemeanor. Is there, Mr. Pilchak?

MR. PILCHAK: I don't believe so, your Honor. No.

THE COURT: You've been charged in a misdemeanor Information with false entry in the required dealer record and aiding and abetting, as well as criminal forfeiture.

Specifically, it's alleged that on October 28th of

2016, you aided and abetted Giovanni Vincenzo Tilotta, who is a licensed dealer and importer of firearms. And you aided him in knowingly making false entries in a record he was required to keep pursuant to federal law. In that, he recorded false records related to the sale of firearms to you on October 28th, 2016.

There is also a forfeiture allegation which, if satisfied, could result in the forfeiture of the following firearms and ammunition: A CZ 75D 9 millimeter pistol. A Glock 27 .40 caliber pistol. A Daniel Defense DDM4V11 5.56 millimeter rifle. A Smith & Wesson M&P Shield 9 millimeter pistol. And ten rounds of .40 caliber Federal ammunition.

I'm going to enter a not guilty plea at this point in the proceedings on your behalf as to all of those charges.

Sir, you have the right to be represented by an attorney. If you can't afford to hire an attorney, you have the right to have one appointed to represent you at no cost to you.

Sir, are you a United States citizen?

THE DEFENDANT: I am.

THE COURT: Okay. You are not required to make any statement. Any statements you make in open court could be used against you.

You have the right to bail unless the Government moves to detain you and there is good cause to hold you without

bail.

Now, Mr. Bajaj, you have retained counsel. Is that correct?

THE DEFENDANT: It is, your Honor.

THE COURT: All right. So, Ms. Grimes, Mr. Bajaj is not seeking appointment of counsel. Is that correct?

MS. GRIMES: That's right, your Honor.

THE COURT: All right. And has -- what is the United States and -- and defense position on bond in this matter?

MR. PILCHAK: Mr. Bajaj may be released on his own recognizance in this matter, your Honor. And I believe it's the parties' request today, following the plea proceeding, that the Court will enter (indiscernible) move to immediate sentencing at the Court's concurrence.

THE COURT: All right.

MS. GRIMES: That's correct, your Honor.

THE COURT: All right. That will be the order of the Court with respect to bond.

Next, sir, I understand that you wish to change your plea from not guilty to guilty. And you wish to plead guilty to the one-count Information charging you with false entry of a required dealer record. And, also, that you are agreeing to forfeiture of the firearms.

Is that what you wish to do?

THE DEFENDANT: That's correct, your Honor. Yes.

THE COURT: All right. Ms. Smith?

THE CLERK: Vikas -- I'm sorry. Vikas Bajaj, is that your true name?

THE DEFENDANT: It is.

THE CLERK: Mr. Bajaj, you previously entered a plea of not guilty to the Information charging you with false entry in a required dealer record, aiding and abetting, and -- and criminal forfeiture.

Do you now wish to plead guilty?

THE DEFENDANT: Yes, ma'am.

THE CLERK: Counsel, do you waive reading of the count?

MS. GRIMES: So waive.

THE CLERK: Mr. Bajaj.

(Defendant sworn.)

THE DEFENDANT: I do.

THE COURT: One more thing, Mr. Bajaj, do you agree to consent to allowing the United States to proceed by way of filing an Information in this case?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. Mr. Bajaj, how old are you?

THE DEFENDANT: 44 years old, your Honor.

THE COURT: How far did you go in school?

THE DEFENDANT: Graduated from law school.

THE COURT: Okay. So you finished high school, you

finished college, and graduated from graduate school, law school. Correct?

THE DEFENDANT: That's correct, your Honor.

THE COURT: And was all of your education, in the English language?

THE DEFENDANT: Yes, your Honor.

THE COURT: So suffice it to say you read English fluently?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. Have you taken any drugs, alcohol, or medication in the last 48 hours that could affect your ability to understand anything that we're doing today?

THE DEFENDANT: No, your Honor.

THE COURT: You have been placed under oath. You must give only truthful answers. If you were to give any false answers, those answers could be used against you, and you could be charged with the crime of perjury.

Addressing your constitutional rights, you have the right to continue to plead not guilty. You have the right to a speedy and public trial. You have the right to be tried by a -- a jury. Or, with the Government's consent, you could agree to be tried by a judge.

You have the right to the assistance of counsel throughout all proceedings, including trial. And if you can't afford to hire an attorney, you have the right to have one

appointed to represent you at no cost to you.

You have the right to confront and cross-examine the witnesses who testify against you. You have the right to put on evidence, testify, and compel witnesses to testify on your behalf.

You have the right to remain silent. You cannot be forced to testify at any hearing or trial. And the Government cannot comment on your silence.

However, by pleading guilty, you will be giving up all of these constitutional rights with the exception of your right to the continued assistance of counsel.

Do you understand all of that?

THE DEFENDANT: I do.

THE COURT: The United States is required to prove every element of the charge against you beyond a reasonable doubt. But, instead, by pleading guilty, you will be admitting those elements and relieving the United States of its obligations to prove them.

You are charged with false entry in a required dealer record and aiding and abetting, and these are the elements of that offense.

Mr. Pilchak.

MR. PILCHAK: Yes, your Honor.

On October the 28th, 2016, Giovanni Vincenzo Tilotta was a licensed dealer and importer of firearms.

Second, on October 28th, 2016, within the Southern District of California, Tilotta knowingly recorded false entries in a record he was required to keep related to the sale of firearms.

Third, Defendant Vikas Bajaj aided Tilotta with respect to knowingly recording false entries in a record he was required to keep.

Fourth, the defendant acted with the intent to facilitate, making a false entry in a record that Tilotta was required to keep.

And, fifth, the defendant acted before the crime was committed.

THE COURT: Sir, do you understand that by pleading guilty, you'll be admitting those elements?

THE DEFENDANT: I do.

THE COURT: In addition, the burden of proof lies with the United States to prove the forfeiture allegations. But I understand that you are also agreeing to admit the -- the forfeiture allegations and agree to the forfeiture of these firearms. Is that correct?

THE DEFENDANT: Correct, your Honor.

THE COURT: Do you understand the United States would otherwise have the burden to prove the forfeiture allegations?

THE DEFENDANT: I do.

THE COURT: These are the maximum penalties you face

as a result of your guilty plea.

MR. PILCHAK: A maximum of one year in jail, a maximum fine of $100,000, a mandatory special assessment of $25, a supervised release term of up to one year, and forfeiture of all firearms and ammunition involved in the offense.

THE COURT: Do you understand those maximum penalties, Mr. Bajaj?

THE DEFENDANT: Yes, your Honor, I do.

THE COURT: Part of your penalty could be to be placed on supervised release following your release from custody.

If you were to violate the conditions of your supervised release and depending on the seriousness of the violation, you could be returned to prison for up to the full amount of the supervised release term without receiving credit for time already spent in custody. A new term of supervised release could be imposed to follow. If you were to violate the conditions of that new period of supervised release, this pattern could happen repeatedly.

Have you discussed the federal sentencing guidelines with your attorney?

THE DEFENDANT: I have, your Honor.

THE COURT: The sentencing guidelines are advisory only. I do not have to follow them.

I must calculate the applicable guideline range in your case, and I must consider that range, possible departures, and other sentencing factors as required by law at the time of your sentencing hearing. But I could -- could impose a sentence of up to the maximum allowed by law.

Do you have any questions about the sentencing guidelines?

THE DEFENDANT: No, I do not, your Honor. Thank you.

THE COURT: Once you're sentenced, you will not be able to withdraw your guilty plea, even if I impose a sentence that is more severe than you were expecting.

Do you understand this?

THE DEFENDANT: I do.

THE COURT: You can appeal your sentence, but not if you've given up that right as part of your plea agreement with the United States.

I have your plea agreement before me. It's in two parts. The main plea agreement, as well as a forfeiture addendum.

Did you go over this plea agreement thoroughly with your attorney?

THE DEFENDANT: Yes, your Honor, I did.

THE COURT: There's a provision in your plea agreement saying that you are waiving your right to appeal or collaterally attack both your conviction and your sentence,

with the exception of any post-conviction collateral attack based on a claim of ineffective assistance of counsel.

Do you understand that provision?

THE DEFENDANT: Yes, your Honor. I do.

THE COURT: Did you sign those -- the components of the plea agreement on the last pages and initial all of the other pages?

THE DEFENDANT: I did, your Honor, yes.

THE COURT: Before doing so, did you read the entire agreement, both parts?

THE DEFENDANT: Yes, your Honor.

THE COURT: As we sit here today, do you have any questions about your plea agreement?

THE DEFENDANT: I do not, your Honor.

THE COURT: Are you happy with the services you've received from your lawyer?

THE DEFENDANT: I am, your Honor.

THE COURT: Other than the promises contained in your written plea agreement, have any other promises been made to you to try to get you to plead guilty?

THE DEFENDANT: No.

(Unidentified speaker speaking on phone line.)

THE COURT: One moment, please.

(Pause.)

THE COURT: All right. I'm going to ask that

question again.

Other than the promises contained in your written plea agreement, have any other promises been made to you to try to get you to plead guilty?

THE DEFENDANT: No, your Honor.

THE COURT: Has anyone threatened you or done anything to try to force you to plead guilty?

THE DEFENDANT: No, your Honor.

THE COURT: I also have to make sure there's a factual basis for your guilty plea.

Mr. Pilchak is going to read the factual basis. Please listen carefully to him. And when he's done, I'm going to ask if everything was completely true.

MR. PILCHAK: Thank you, your Honor.

On October the 28th, 2016, Giovanni Vincenzo Tilotta, a licensed dealer and importer of firearms, otherwise known as a federal firearms licensee or FFL, doing business as Honey Badger Firearms -- on October the 28th, 2016, Tilotta transported three firearms to the Rancho San Diego substation of the San Diego County Sheriff's Department, which is in the Southern District of California.

Specifically, he transported a Daniel Defense AR-15-style 5.56 millimeter rifle, a Smith & Wesson Shield 9 millimeter handgun, and a Glock 27 .40 caliber pistol, all bearing the listed serial numbers.

Tilotta then processed the sale and transfer of the firearms to Vikas Bajaj inside the office of Marco Garmo, who was a Rancho San Diego sheriff's captain at that time.

The sale and transfer of the firearms required the completion of several state and federal forms. The law required Tilotta to make payment forms as the FFL conducting the transaction.

Prior to October 28, 2016, Bajaj and Tilotta had not met in person related to the sale of the firearms. In order to facilitate the sale of the firearms at a single meeting, incorrect dates were entered on the state and federal forms next to the space for Bajaj's signature. This backdating gave the false impression that the appropriate processes, including the legally required waiting period had been followed. Tilotta then kept the backdated forms in his records.

Bajaj knew that the forms contained these backdated and false entries, but aided and abetted Tilotta's entry of the false records by signing the forms and going ahead with the firearms transfer regardless on October the 28th, 2016, knowing that the information on the forms was false and intending to facilitate the false entries.

THE COURT: Mr. Bajaj, is all of that entirely true?

THE DEFENDANT: Yes, your Honor.

THE COURT: Ms. Grimes, is this plea being made knowingly and voluntarily and with your concurrence?

MS. GRIMES: Yes, your Honor.

THE COURT: Mr. Bajaj, how do you now wish to plead to the one-count information charging you with false entry in a required dealer record and aiding and abetting? Guilty or not guilty?

THE DEFENDANT: Guilty, your Honor.

THE COURT: And, in addition, do you agree to forfeit the items identified in the Information and the forfeiture then?

THE DEFENDANT: I do.

THE COURT: I find that this guilty plea is made knowingly and voluntarily, with a full understanding of the nature of the charge, the defendant's constitutional rights, and the consequences of his guilty plea. I will accept the plea of guilty.

Mr. Bajaj, do you wish to proceed to immediate sentencing?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. I do have -- I could order a presentence report. This would give the probation department an opportunity to interview, gather information about your background, and provide me with that additional information, as well as analysis of the -- of the sentencing guidelines in this case.

Do you wish to waive your right to a presentence

report?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. I have the Government's sentencing summary chart. I obviously have the complaint, the Information, and the plea agreement.

I trust that -- that Mr. Bajaj has no criminal history. Is that correct?

MS. GRIMES: That's correct.

MR. PILCHAK: That's correct, your Honor.

THE COURT: All right. Then I feel comfortable proceeding to immediate sentencing. I believe I have the sufficient information, without the benefit of a presentence report.

All right. I'll hear first from you, Mr. Pilchak, and then I'll hear from Ms. Grimes.

MR. PILCHAK: Thank you, your Honor.

The parties jointly recommend one year of probation for this misdemeanor offense. We've calculated the guidelines, as you can see in the plea agreement and in the Government's sentencing summary chart. They are low. Offense Level 6, reduced by two for acceptance of responsibility. It's not only a zero to six months sentencing guideline range, but it's firmly in the zero to six-month range.

Mr. Bajaj has no criminal history. And given the nature of the offense and the admissions in the plea agreement

and the deterrent value of the conviction itself, we believe that a probationary sentence of a year is appropriate in this case.

We would submit on that, unless the Court has further questions.

THE COURT: Are there any special conditions that the United States would be inviting me to impose?

MR. PILCHAK: Beyond the standard conditions, your Honor, of violating no law and not using illegal drugs, the only condition that we would ask for is that Mr. Bajaj not participate in any firearms transfers during the period of probation.

THE COURT: And what do you mean by that? Do you mean personal acquisitions and sales on his own behalf or do you mean participation in the transfer of firearms involving third parties? Or all of the above?

MR. PILCHAK: So, Mr. Bajaj, as far as we're aware, is not a licensed dealer himself. So his ability to participate in firearms transfers should be limited to just acquiring firearms, disposing of firearms on his own behalf.

And that's what we would be requesting is that the Court order during the period of probation he neither (indiscernible due to electronic interference) those (indiscernible) firearms.

THE COURT: All right. Does he currently own and

possess firearms, as far as you know?

MR. PILCHAK: There are two -- there are two different answers to that question, your Honor.

He does currently own firearms even beyond the firearms he's agreed to forfeit. They are currently in the possession of the ATF. But I believe that they will be returned to Mr. Bajaj following the resolution of his case.

And so I believe that in a matter of weeks, perhaps slightly longer depending on the period of the transfer, he will possess two firearms registered in his own name.

MS. GRIMES: And that's our understanding as well.

As a point of clarification, I'm glad that came up because I wanted to make sure that if he was in possession of his own firearms and his wife's as a result of those firearms being returned to him after their seizure, that that would not be in violation of any order imposed by the Court that he not engage in any other transfer of firearms.

And I have no objection to that as a condition of his one-year probation, if the Court proceeds to impose it. Mr. Bajaj has no interest in gaining any other firearm during the next year, aside from those which he believes are about to be lawfully returned to him and to his wife.

THE COURT: All right. So it sounds like everybody has the same understanding of what that restriction would and wouldn't entail.

All right. Anything further, Mr. Pilchak, before I hear from Ms. Grimes?

MR. PILCHAK: No, your Honor. Thank you.

THE COURT: All right. Ms. Grimes.

MS. GRIMES: Thank you, your Honor.

Mr. Bajaj is 44 years old. He has two very young children. They're four and two years old. His wife is virtually present today as a supporter for him.

He has been practicing law in our community for two decades. He is a criminal defense attorney. He has never had any issue of discipline, much less a criminal law issue in his career.

He's well known. He's often a commentator on local news and national news programs. And he's a spectacular lawyer. But, in addition to that, he's served as a mentor to lawyers in our community, lawyers who are starting their own practices, leaving big firms and the DA's office. And he teaches young lawyers and law students.

And because this is not the typical case before the Court, I just want to make sure that it's clear that Mr. Bajaj was not, at the time of this conduct, a prohibited person from owning firearms. Nor is he now a prohibited person, as we just discussed.

Before the transfer of the guns in this case, he had undergone, in previous instances, background checks; including,

in fact, he previously held a CCW license. So he had undergone, you know, a more stringent background check in that regard.

So he completely accepts responsibility for his role in the offense. And the factual basis speaks for itself in terms of why this was a violation of the law.

But I just wanted to make that clear because this is not the typical -- certainly not the typical 922 case in this particular subsection.

So the parties, as Mr. Pilchak indicated, do not contemplate any further punitive sanctions beyond the conviction itself and one year of probation and a special assessment.

The parties are not seeking a fine, and I've asked that the Court not impose a fine. And no financial loss to anyone occurred as a result of this conduct.

And the matter has been personally and professionally devastating to Mr. Bajaj here in the Southern District of California and also in Superior Court. But here, in particular in the southern district, he has a number of pending cases.

He notified the district court judges assigned to those cases of this investigation and obtained conflict waivers from his clients on those matters. The majority of whom, thankfully, want Mr. Bajaj to continue to represent them because they have a good relationship of trust in him as their

lawyer. But he has lost clients as a result of this case, and he expects that that will (indiscernible due to electronic interference) loss.

And so as the provider for his wife and his kids and after 20 years of developing his career and his reputation, he has spent a lot of sleepless nights dealing with these collateral consequences, which would not occur to the average citizen.

And, so for those reasons, we think this is an appropriate, strictly probationary case. And I have no objection to the probationary condition of not engaging in the use of prohibited controlled substances.

THE COURT: And, Ms. Grimes, what -- what will Mr. Bajaj's obligations be with respect to the California state bar?

MS. GRIMES: Well, those obligations are underway. It's not at all a certainty what will happen. But he will be notifying the state bar of this matter. He's retained state bar counsel. He expects that there will be efforts going forward with regard to the state bar, and that those could be further collateral -- collateral consequences of this conviction. So that's not something that's at all being avoided in this case. And all of the parties, from the outset, in dealing with the negotiation of this case, have had those potential consequences in mind.

THE COURT: And does he have an ethical obligation under the California state bar rules to make this disclosure?

MS. GRIMES: He believes that he does.

THE COURT: All right. Because I'm inclined to add that as a condition, even though you're representing that it's his intent to do it. I'm inclined to add it as a condition to any probationary sentence.

Is there any opposition to that? Or do you want to be heard on that?

MS. GRIMES: I would submit on that, your Honor.

THE COURT: All right. Mr. Bajaj, is there anything you would like to say to me before I impose sentence in this case?

THE DEFENDANT: (Pause.) Just one moment, if I may.

THE COURT: Take your time, sir. It's all right.

THE DEFENDANT: Thank you.

You know, never in a million years would I have imagined I would be advocating this way, in this arena.

Thank you, Ms. Grimes, for outlining a bit of my history as a lawyer. I take great pride in my practice. I take great pride in helping people who need the exact type of help that I have been provided with today.

To say this has been an easy, ministerial action is wrong. It has ripped our soul -- my family's soul and mine out.

It has caused significant anxiety. It has caused my entire future to be flashing before my eyes.

I wasn't born with a silver spoon. I had nobody helping me. But I have created what I'm very proud of from God's will and hard work.

And my open aspiration is that I will continue to help the citizens of this country and of our fine city that has done so much for me.

From the morning of the raid at our house at 6:30, with my two-year-old boy and my four-year-old boy, whom we love more than life itself, it has slapped us in the face as to the err of my ways. And I do accept responsibility.

I would like the Court to understand that this was conduct in 2016. I -- just after the birth of my first year-old boy Vikas Bajaj II. And I do accept full responsibility.

I want you to know, your Honor, and Mr. Pilchak -- and Ms. Grimes, has heard this a million times, I'm sure. But the weight on my shoulders is tremendous. And I must continue to provide for my family and recuperate (indiscernible due to electronic interference) extraordinarily painful experience, be cooperative, and I will continue to be cooperative. I feel the pound of flesh has already been excised, and then some.

And, of course, I leave the discretion to your Honor. And thank you for letting me speak.

THE COURT: Thank you.

Ms. Grimes, do you have any disagreement with the -- with the guidelines calculation as set forth by the United States?

MS. GRIMES: No, I concur in it.

THE COURT: All right. This is a Base Offense Level of 4 -- I'm sorry. A Base Offense Level of 6. Granting a minus two adjustment for acceptance of responsibility. Leaves a Total Offense Level of 4, with a Criminal History Category of I, the guideline range becomes zero to six months.

I considered that guideline range as well as all of the 3553(a) factors, and I feel that a -- a probationary sentence is the appropriate sentence in the case, as remedy by both parties. That it is sufficient but not greater than necessary for complying with the purposes of 18 USC 3553.

I am going to, as I said, impose a period of one year of probation.

I am going to take a moment now to consider the conditions, and then I'll -- and then I'll address you again.

(Pause.)

THE COURT: Mr. Pilchak, are you recommending supervised probation or unsupervised probation?

MR. PILCHAK: I believe in this case unsupervised probation would be sufficient, your Honor.

THE COURT: All right.

I'm going to impose one year of unsupervised probation with the following mandatory conditions:

The defendant must not commit any federal, state, or local crime. The defendant must not unlawfully possess any controlled substance. Defendant must cooperate in the collection of a DNA sample by a probation officer.

Does anyone think that that condition is not applicable in a Class E misdemeanor case?

MS. GRIMES: I'm sorry, your Honor? You broke up in the last half of your sentence, your Honor. I'm sorry.

THE COURT: In the collection of the DNA sample, does anyone believe that is not an applicable condition in a Class E misdemeanor case?

MS. GRIMES: Yes, your Honor, I do not believe that a DNA sample is required in this matter.

If Mr. Pilchak would have no objection, I would defer to the Court on that. I would ask that that condition not be imposed.

MR. PILCHAK: I do defer to the Court.

THE COURT: You do what?

MR. PILCHAK: I defer to the Court, your Honor.

THE COURT: Well, I'm actually asking. It's a mandatory condition. I'm just not -- as I sit here today, I don't recall if it's a mandatory condition only for felony cases or if it's a mandatory condition that applies in --

MS. GRIMES: My recollection is that it's for felony cases, your Honor. I can look that up, as I see Mr. Pilchak is doing the same.

THE COURT: Thank you. I appreciate that assistance.

While they're looking at that, I'm going to direct an inquiry to the deputy marshal in the courtroom.

THE MARSHAL: Yes, your Honor.

THE COURT: What -- what arrangements, if any, should we make for Mr. -- Mr. Bajaj to be fingerprinted and photographed by the Marshals Service?

Is that necessary, since he's not going into custody?

THE MARSHAL: Yes, your Honor. If -- if the defendant hasn't been processed, it's necessary to (indiscernible).

THE COURT: Okay. What period of time -- I don't want him -- unless -- unless you tell me it needs to be more immediate, I am inclined to set that out until after the current lockdown is concluded. So order him to report to the Marshals Service to be fingerprinted and photographed no later than January 15th.

Does that work for you?

THE MARSHAL: That's fine with me.

THE COURT: All right.

THE MARSHAL: From 8:00 -- from 8:15 a.m. (indiscernible) --

THE COURT: From 8:15 a.m. -- did you say 8:15?

THE MARSHAL: -- 4:00 p.m.

THE COURT: 8:15 to 4:00 p.m.

THE MARSHAL: Yes. Monday through Friday.

THE COURT: All right. Here's what I'm going to do. I'm going to impose this as a condition, based on the -- the belief that it is mandatory.

But if I'm in error on that and the parties can bring it to my attention within the window to correct and amend the judgment, I will do that.

So, for right now, I will order that you cooperate in the collection of a DNA sample. I am also going to -- I -- I am imposing unsupervised probation. And, therefore, there will not be standard conditions of supervision.

I am going to add a special condition:

That you report this conviction to the California Bar -- California State Bar before the end of the year.

And this is not a condition of your probation, but I am also ordering you to report to the United States Marshal's Service no later than January 15th on a Monday -- on a weekday, between the hours of 8:15 a.m. to 4:00 p.m., to be fingerprinted and photographed.

I'm not going to impose a fine. Restitution is not applicable.

I will order forfeiture of the firearms as -- as

agreed to in the forfeiture addendum.

MR. PILCHAK: Thank you, your Honor.

And did the Court receive a copy of the preliminary order of forfeiture that we submitted by email as well?

THE COURT: I did.

MR. PILCHAK: Wonderful.

THE COURT: And, Ms. Grimes, in light of the sentence imposed, has Mr. Bajaj waived his appeal rights?

MS. GRIMES: Yes, he has.

THE COURT: Do you agree, Mr. Bajaj, that you have waived your write to appeal?

THE DEFENDANT: I do, your Honor. Yes.

THE COURT: All right. Then that will be the orders of the Court.

Is there anything else we should address with Mr. Bajaj today?

MR. PILCHAK: No. Not for the United States, your Honor.

MS. GRIMES: No, your Honor. Not on his behalf.

THE COURT: All right. Mr. Bajaj, I -- I'm -- I'm glad that this day has come in your life. This is the beginning of putting this all behind you.

I have no doubt -- there is not a single doubt in my mind that you are going to make your way through your probationary period without incident, and that a year from now

you'll be off probation. And -- and hopefully your -- your life will go on better than it was before.

THE DEFENDANT: Thank you, your Honor -- your Honor. Thank you, Mr. Pilchak, Ms. Grimes, and, most importantly, my wonderful wife who has been my rock.

And thank you for your kind words. Those mean a lot to us, your Honor. Thank you.

THE COURT: Okay. Thank you. Best of luck, sir.

THE DEFENDANT: Thank you.

MR. PILCHAK: Thank you, your Honor. And thank you for accommodating us.

THE COURT: Of course.

(Pause. Court and the clerk conferring.)

(Conclusion of proceedings.)

--oOo--

I certify, by signing below, that the foregoing is a correct stenographic transcript, to the best of my ability, of the digital recording of the audio proceedings had in the above-entitled matter this 19th day of February, 2021. A transcript without an original signature or conformed signature is not certified. I further certify that the transcript fees and format comply with those prescribed by the Court and the Judicial Conference of the United States.

/S/ Amanda M. LeGore

AMANDA M. LeGORE, RDR, CRR, CRC, FCRR, CACSR 14290